# IN THE SUPREME COURT OF TEXAS

═══════════

No. 19-0962

═══════════

ODYSSEY 2020 ACADEMY, INC., PETITIONER,

V.

GALVESTON CENTRAL APPRAISAL DISTRICT, RESPONDENT

═══════════════════════════

ON PETITION FOR REVIEW FROM THE
COURT OF APPEALS FOR THE FOURTEENTH DISTRICT OF TEXAS

═══════════════════════════

**Argued February 23, 2021**

JUSTICE BUSBY delivered the opinion of the Court, in which JUSTICE LEHRMANN, JUSTICE BOYD, JUSTICE DEVINE, JUSTICE BLACKLOCK, and JUSTICE BLAND joined.

JUSTICE GUZMAN filed a dissenting opinion, in which CHIEF JUSTICE HECHT and JUSTICE HUDDLE joined.

This tax-exemption case concerns privately owned real property in Galveston County. Petitioner Odyssey 2020 Academy subleases the property and uses it to operate a public open-enrollment charter school. Odyssey contractually agreed to pay the property owners' ad valorem taxes, and it requested that the Galveston Central Appraisal District exempt the property from taxation under section 11.11(a) of the Tax Code as "property owned by this state." Odyssey relies on section 12.128(a) of the Education Code, which provides that property a charter school purchases or leases with state funds "is considered to be public property for all purposes under state law."

The District denied Odyssey's exemption request and Odyssey sought review in district court, which granted summary judgment for the District. The court of appeals affirmed, reasoning

1

that Odyssey has only a leasehold interest and section 12.128 does not in fact give Odyssey either legal or equitable title to the property.

We agree with the District, trial court, and court of appeals: Odyssey is not entitled to an exemption from the ad valorem tax. Property encumbered by a lease is taxed to the lessor who owns the underlying fee interest, and not even Odyssey contends that section 12.128 actually strips the private lessors of their fee ownership. We assume that section 12.128 "consider[s]" property to be publicly owned for tax purposes if a charter school has a leasehold interest in it. But our Constitution does not allow the Legislature to recharacterize a property interest that is not in fact publicly owned so that it qualifies for an exemption.

The Texas Constitution sets detailed limits on the Legislature's authority to create exemptions because they undermine the guarantee that "[t]axation shall be equal and uniform,"[1] imposing a greater burden on some taxpayers rather than sharing the burden among all taxpayers equally. We have long enforced these constitutional limits, and our precedent is clear that the Legislature may not treat the public as the owner of a fee estate it does not actually own. *See Tex. Tpk. Co. v. Dallas County*, 271 S.W.2d 400, 402 (Tex. 1954) ("Public ownership, for tax-exemption purposes, must grow out of the facts . . . [and] may not be created or conferred by mere legislative, or even contractual, declaration."). To hold that the Legislature can alter the facts by statute in order to trigger an exemption, we would have to overrule many of our decisions. Moreover, we would eliminate the constraining force of the carefully drawn constitutional limits on exemptions—limits that the Constitution ranks as important enough to provide expressly that laws exceeding them are null and void.

---

[1] TEX. CONST. art. VIII, § 1(a).

2

If the people of Texas want to exempt any property owner who leases to a charter school and take that additional tax burden on themselves, they can do so by amending the Constitution. And such an exemption may very well be good policy. But so far, the people have seen fit to permit an exemption for real property leased to a school only if that property "is owned by a church or by a strictly religious society." TEX. CONST. art. VIII, § 2. It is not our place to override their policy judgment. *See Tex. So. Univ. v. Villarreal*, __ S.W.3d __, __ (Tex. 2021). We therefore hold that the Constitution does not permit an exemption for Odyssey on these facts.

## BACKGROUND

The State of Texas has authorized Odyssey to operate public open-enrollment charter schools and provide public education to children in Galveston County and surrounding areas. Some Odyssey schools are located on property that Odyssey owns, and the District has designated that property as exempt from ad valorem taxation. Part of Odyssey's main campus is located on property it does not own but uses under a long-term sublease from private owners. This dispute concerns whether the property subleased by Odyssey is exempt from taxation.

The owners of the property are Aneff, LLC and Alisan, LLC, Delaware Limited Liability Companies based in Boca Raton, Florida. Safeway Stores, Inc. leased the property from the LLCs beginning in 1976. Safeway subsequently assigned its tenancy under the lease to HEB Grocery Company, L.P.

HEB subleased the property to Odyssey in 2009. Under the sublease, Odyssey agreed to pay HEB monthly rent. Odyssey also agreed to pay ad valorem taxes assessed against the property. Odyssey has no right to purchase any of the leased premises.

In December 2016, Odyssey requested that the District exempt the property from ad valorem taxes as "property owned by this state" under section 11.11 of the Tax Code, pointing out

3

that section 12.128(a) of the Education Code considers property purchased or leased by a charter school to be "public property for all purposes." Odyssey sought the exemption for the 2009 tax year and all subsequent years. The District denied Odyssey's exemption request, and Odyssey exhausted its administrative remedies by protesting the denial to the appraisal review board. The board denied the protest, and Odyssey sued in district court in Galveston County. In its petition, Odyssey sought review of the denial under Chapter 42 of the Tax Code and also requested a declaratory judgment and injunctive relief establishing its entitlement to an exemption, as well as attorneys' fees. Both the District and Odyssey moved for summary judgment.

The trial court granted summary judgment for the District, ordering that Odyssey take nothing. Odyssey appealed and the Fourteenth Court of Appeals affirmed, concluding that the property is not publicly owned as required for a section 11.11 exemption. 585 S.W.3d 530, 534–35 (Tex. App.—Houston [14th Dist.] 2019). The court reasoned that section 12.128 of the Education Code does not provide a tax exemption, nor does it "purport to confer legal or equitable title in leased property to a charter school that leases the property from a private entity . . . ." *Id.* at 536. It also held that Odyssey's claim for declaratory relief was properly dismissed as redundant. *Id.* We granted Odyssey's petition for review.

ANALYSIS

I.      Standard of review and applicable law

We review the trial court's summary judgment *de novo*. *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003). On cross-motions for summary judgment, each party bears the burden of establishing that it is entitled to judgment as a matter of law. *City of Garland v. Dall. Morning News*, 22 S.W.3d 351, 356 (Tex. 2000). When the trial court grants one

4

motion and denies the other, the reviewing court must determine all questions presented and render the judgment that the trial court should have rendered. *Id.*

This case also involves the interpretation of constitutional and statutory language, which we review de novo "to ascertain and give effect to the Legislature's intent." *Entergy Gulf States, Inc. v. Summers*, 282 S.W.3d 433, 437 (Tex. 2009). We look for that intent first and foremost in the plain language of the constitutional or statutory provision. *Lippincott v. Whisenhunt*, 462 S.W.3d 507, 509 (Tex. 2015). We give effect to all words of a provision and avoid constructions that would render any part of it meaningless. *Spradlin v. Jim Walter Homes, Inc.*, 34 S.W.3d 578, 580 (Tex. 2000).

These summary judgment motions require us to decide whether Odyssey is entitled to claim a tax exemption. A foundational principle of our Texas tax system is that "[t]axation shall be equal and uniform." TEX. CONST. art. VIII, § 1(a). Applying this principle, the Constitution provides that real and tangible personal property "shall be taxed in proportion to its value"—so-called ad valorem taxation—"unless exempt as required or permitted by this Constitution." *Id.* § 1(b). The Constitution requires certain exemptions and specifies additional exemptions that it permits the Legislature to adopt by statute. *See, e.g.*, *id.* § 1(d). But the Constitution also provides that "all laws exempting [other] property from taxation . . . shall be null and void." *Id.* § 2(a).

The Tax Code's chapter on taxable property begins by reiterating the constitutional command that "[a]ll real and tangible personal property that this state has jurisdiction to tax is taxable unless exempt by law." TEX. TAX CODE § 11.01(a). "Statutory exemptions from taxation are subject to strict construction because they undermine equality and uniformity by placing a greater burden on some taxpaying businesses and individuals rather than placing the burden on all taxpayers equally." *N. Alamo Water Supply Corp. v. Willacy Cnty. Appraisal Dist.*, 804 S.W.2d

5

894, 899 (Tex. 1991).[2]  Thus, we have held that "an exemption cannot be raised by implication, but must affirmatively appear." *Tex. Student Housing Auth. v. Brazos Cnty. Appraisal Dist.*, 460 S.W.3d 137, 141 (Tex. 2015) (quoting *Bullock v. Nat'l Bancshares Corp.*, 584 S.W.2d 268, 271 (Tex. 1979)).  The taxpayer has the burden to "clearly show" that an exemption applies, and all doubts are resolved against the granting of an exemption.  *Id.*  But construing exemptions narrowly does not mean disregarding the words used by the Legislature.  *See AHF–Arbors at Huntsville I, LLC v. Walker Cnty. Appraisal Dist.*, 410 S.W.3d 831, 837 (Tex. 2012).

## II.     Odyssey may not claim a tax exemption for private property it leases.

### A.     Ownership of leased property determines tax liability and the right to an exemption.

To decide whether Odyssey is entitled to a tax exemption, we must begin with a clear understanding of what property is being taxed and to whom.  This Court has long recognized that property taxes are tied to the property rather than to a person or entity.  *See, e.g.*, *State v. Wynne*, 133 S.W.2d 951, 956 (Tex. 1939).  "A person who owns property is generally liable for property taxes assessed on that property, and a person who does not own property generally has no property tax liability." *Willacy Cnty. Appraisal Dist. v. Sebastian Cotton & Grain, Ltd.*, 555 S.W.3d 29, 42 (Tex. 2018); *see* TEX. TAX CODE § 32.07(a) ("[P]roperty taxes are the personal obligation of the person who owns or acquires the property on January 1 of the year for which the tax is imposed.").  Either legal or equitable title can be sufficient to demonstrate ownership.  *Sebastian Cotton & Grain*, 555 S.W.3d at 46; *AHF–Arbors at Huntsville I*, 410 S.W.3d at 839.

Sections 25.06 and 25.07 of the Tax Code specifically address the tax liability of an owner of real property and the owner of a leasehold interest in that property.  Generally, "[p]roperty

---

[2] *See also Brazos Elec. Power Coop., Inc. v. Tex. Comm'n on Envtl. Quality*, 576 S.W.3d 374, 384 (Tex. 2019); *Sw. Royalties, Inc. v. Hegar*, 500 S.W.3d 400, 405 (Tex. 2016); *N. Alamo Water Supply Corp.*, 804 S.W.2d at 899 ("[E]xemptions from taxation are not favored by the law and will not be favorably construed.").

6

encumbered by a leasehold or other possessory interest . . . shall be listed in [the appraisal records in] the name of"—and therefore taxed to—"the owner of the property so encumbered." TEX. TAX CODE § 25.06(a). There is an exception to this general rule: if the property "is exempt from taxation to the owner of the estate," then generally the "leasehold or other possessory interest . . . shall be listed in the name of the owner of the possessory interest" if it may last at least one year. *Id*. § 25.07(a).[3] But the Code includes no special rule for the reverse situation in which the owner of a leasehold interest could claim an exemption because none is necessary: the lessee's interest is not taxed under the general rule of section 25.06. *See Cnty. of Dall. Collector v. Roman Catholic Diocese of Dall.*, 41 S.W.3d 739, 744 (Tex. App.—Dallas 2001, no pet.) ("Unless the leasehold involves exempt property, the leasehold is not independently taxed, but rather, it is subsumed within the value of the fee simple estate.").

In this case, the two LLCs are listed on the appraisal rolls as the owners of the real property at issue, and it is undisputed that they hold both legal and equitable title to the property. The District is not taxing Odyssey's leasehold interest; Odyssey owes taxes only because it contractually bound itself to pay the LLCs' taxes as owners of the property. Odyssey can thus obtain an exemption by showing that either (1) the property is exempt from being taxed to the LLCs as owners of the fee estate, or (2) Odyssey's lease changes the property's ownership for tax purposes so that it becomes exempt.

Odyssey pursues the latter course by claiming an exemption under section 11.11 of the Tax Code and under Article XI section 9 and Article VIII section 2 of the Constitution. Section 11.11's

---

[3] "In this manner, the constitutional directive that all non-exempt property be taxed is complied with—if property is not exempt and leased, the lease is subsumed by [and taxed as a part of] the fee estate; if the property is leased and the fee remains exempt, the non-exempt leasehold becomes the taxable estate." *Gables Realty Ltd. P'ship v. Travis Cent. Appraisal Dist.*, 81 S.W.3d 869 (Tex. App.—Austin 2002, pet. denied); *see also Wackenhut Corr. Corp. v. Bexar Appraisal Dist.*, 100 S.W.3d 289, 292 (Tex. App.—San Antonio 2002, no pet.) (holding private leasehold interest in public property did not qualify for exemption as publicly owned property). Section 23.13 of the Tax Code addresses the proper valuation of a taxable leasehold.

general rule is that "property owned by this state . . . is exempt from taxation if the property is used for public purposes." TEX. TAX CODE § 11.11(a). Noting that "[a]n open-enrollment charter school is part of the public school system of this state,"[4] Odyssey argues that section 12.128(a) of the Education Code deems any property it leases with state funds "to be public property for all purposes"—which necessarily includes ownership of the property for tax purposes. Because the property is considered owned by a public entity and is used exclusively for public school purposes, this argument runs, the property is exempt under section 11.11 and the Constitution.

We analyze Odyssey's argument in two parts. First, we consider whether section 12.128 characterizes the property interest being taxed—the fee estate—as public property for tax purposes. Second, if so, we address how that statutory characterization impacts Odyssey's entitlement to the tax exemptions it claims.

### B. Section 12.128 considers leased property to be public but does not alter fee ownership.

During the earliest tax years at issue, section 12.128 of the Education Code provided in relevant part:

(a) Property purchased or leased with [state] funds received by a charter holder . . . after September 1, 2001:

    (1) is considered to be public property for all purposes under state law;

    (2) is property of this state held in trust by the charter holder for the benefit of the students of the open-enrolment charter school; and

    (3) may be used only for a purpose for which a school district may use school district property.[5]

The section goes on to limit the charter school's ability to transfer, sell, or otherwise dispose of such property and to provide for the property's disposition in the event the school ceases to operate.

---

[4] TEX. EDUC. CODE § 12.105.

[5] Act of May 17, 2001, 77th Leg., R.S., ch. 1504, § 18, sec. 12.128, 2001 Tex. Gen. Laws 5344, 5354 (current version at TEX. EDUC. CODE § 12.128(a)).

In 2019, the Legislature divided this section into two parts: section 12.128(a), which states the three rules quoted above for purchased property; and section 12.128(a-1), which restates the same rules for leased property. Although this change was not substantive, the Legislature also added section (b-1), which provides that "while an open-enrollment charter school is in operation, the charter holder holds title to any property described by subsection (a) or (b) [addressing purchases prior to September 1, 2001] and may exercise complete control over the property as permitted under the law." TEX. EDUC. CODE § 12.128(b-1).

Focusing on the language of subsection (a) (now subsection (a-1)) that considers leased property to be "public property for all purposes under state law," Odyssey argues that the court of appeals erred in concluding that the statute's failure to mention taxation or exemptions means that it does not operate as to those subjects. Section 12.128 does not say "all purposes except for exemption from taxation," or even "all purposes under this section," as Odyssey notes some other statutes do.[6] In Odyssey's view, taxes, exemptions, and all other subjects state law could contemplate are necessarily encompassed by the words "all purposes under state law." Moreover, the section does not say that only the leasehold interest is public for tax purposes; it says that the "property leased" with state funds is considered public. Odyssey recognizes, however, that the statute does not "usurp the private owner's remaining [fee] interest."

The District responds that section 12.128 does not speak to tax exemptions for leased real property. Nor does it establish that the entire property is publicly owned for purposes of claiming an exemption under Tax Code section 11.11, as the property Odyssey acquired with public funds

---

[6] For example, section 9.343 of the Business and Commerce Code includes the following language with respect to "first purchaser[s]": "To the extent the operator receives proceeds attributable to the interest of other interest owners from a third-party purchaser who acts in good faith under a division order or other agreement authenticated by such operator, the operator *is considered to be the first purchaser of the production for all purposes under this section*." TEX. BUS. COMM. CODE § 9.343(r)(3) (emphasis added).

is limited to its leasehold interest. Section 12.128 does not say that if state funds are used to acquire *any* interest in property, then *all* interests in that property—all sticks in the bundle of property rights—are deemed to be publicly owned. The District points out that the statute does not mention the concept of ownership or say that the public owns more property than Odyssey paid for.

The District also contends that under Odyssey's proposed interpretation, any person leasing property to a charter school is effectively divested of their private ownership interest. The property immediately becomes "public property for all purposes" and is no longer privately owned. Thus, the landlord's ownership interest is automatically forfeited.

We assume for purposes of our analysis that Odyssey's interpretation of the statute is correct. We also conclude that this interpretation does not strip private owners of their fee ownership, as the District asserts. "A court may not judicially amend a statute by adding words that are not contained in the language of the statute. Instead, it must apply the statute as written." *Lippincott*, 462 S.W.3d at 508. As Odyssey argues, the statute applies "for all purposes." We cannot add a proviso "except for tax purposes." Nor can we look to the rule that an exemption must affirmatively appear, as Odyssey is not primarily arguing that section 12.128 itself provides a tax exemption. Rather, it argues that section 12.128 considers the property public so that it falls within different provisions that expressly exempt publicly owned property from taxation (which we discuss in Part II.C. below).

Section 12.128 ensures that restrictions on state funds will carry forward when they are used to acquire real and personal property. It does so by deeming the property leased to be public for all purposes, requiring charter schools to hold it in trust, and providing that it may be used and disposed of only for school purposes. But as Odyssey concedes, the statute does not alter the normal rules regarding acquisition and divestiture of title to real property held by others. Thus,

10

although we assume that section 12.128 characterizes the underlying property as public when it is leased by a public charter school using state funds, the statute does not transfer actual ownership of that property.

Section 12.128(b-1) confirms this conclusion. As discussed above, this subsection provides that "the charter holder holds title to any property described by subsection (a) or (b) and may exercise complete control over the property." TEX. EDUC. CODE § 12.128(b-1). Subsections (a) and (b) refer to purchases of property; the Legislature did not include a *lessee* under subsection (a-1) in the list of charter holders that hold title to their property. "We presume the legislature chose statutory language deliberately and purposefully." *Tex. Lottery Comm'n v. First State Bank of DeQueen*, 325 S.W.3d 628, 635 (Tex. 2010). Thus, we conclude that the Legislature intended a charter school to be an actual owner—holding *title* in trust for the public—only when the school purchases the land.

In sum, we agree with Odyssey that state funds retain their public character when a charter school uses them to purchase or lease property. And we assume that section 12.128 characterizes the property Odyssey leased with state funds as public property for taxation purposes. But section 12.128 does not deprive the private lessors of their fee ownership of the property.

C.     **The Constitution does not authorize an exemption for leased property that is privately owned but deemed public by statute.**

Having assumed that section 12.128 considers property to be public when it is leased by a charter school, we next address whether the Constitution allows Odyssey to claim an exemption based on that statutory characterization. As explained above, all real property must be taxed unless the Constitution either requires or permits an exemption. TEX. CONST. art. VIII, § 1(b). The exemptions Odyssey claims fall into two categories: exemptions for certain public property and certain school property. But as we discuss below, our cases uniformly hold that the first category

11

requires actual public ownership of the property, and the second requires that the owners of the property and the operators of the school be the same people or entities. A statute that deems property public without altering actual ownership does not help Odyssey meet either constitutional requirement.[7]

### 1. Exemptions for publicly owned property

Odyssey contends that section 12.128's characterization of the leased property as public allows it to claim an exemption not only under Tax Code section 11.11, but also under Article XI section 9 and the public property clause of Article VIII section 2 of the Constitution. We disagree.

As a preliminary matter, we note that Article XI section 9 is a distinct constitutional ground for exemption that is "self-operative," requiring no legislation to implement it. *A&M Consol. Indep. Sch. Dist. v. City of Bryan*, 184 S.W.2d 914, 915 (Tex. 1945). Odyssey did not exhaust its administrative remedies by asking the District for this exemption, nor did it raise Article XI section 9 in the trial court, assign the failure to grant that exemption as error in the court of appeals, or mention the exemption in its petition seeking this Court's review. Rather, it raised the exemption for the first time in its merits brief after it had been addressed in an amicus brief. The issue of Odyssey's entitlement to an Article XI section 9 exemption is therefore not properly presented for our review.[8] Nevertheless, considering Article XI section 9 would not change the outcome of this

---

[7] In so holding, we do not declare section 12.128 unconstitutional either generally or as applied to taxation. That section's public characterization of property applies "for all purposes," not just for tax purposes, and this case does not concern its effect for any other purposes. Even in the tax context, we have assumed that section 12.128 broadly considers the property subject to a charter school lease as public property. That characterization is not unconstitutional; it is simply not sufficient to qualify the property as exempt under constitutional provisions and statutes that require actual rather than deemed public ownership.

[8] *See Cameron Appraisal Dist. v. Rourk*, 194 S.W.3d 501, 502 (Tex. 2006); *Webb Cnty. Appraisal Dist. v. New Laredo Hotel, Inc.*, 792 S.W.2d 952, 954 (Tex. 1990) (explaining that administrative review process is intended to "resolve the majority of tax protests at this level, thereby relieving the burden on the court system"); *Harris Cnty. Appraisal Dist. v. ETC Mktg., Ltd.*, 399 S.W.3d 364, 369–70 (Tex. App.—Houston [14th Dist.] 2013, pet. denied); TEX. R. APP. P. 53.2(f).

case because that exemption—like Article VIII section 2 of the Constitution and Tax Code section 11.11—requires actual public ownership.

### a. A public entity must actually own the property.

Article XI section 9 is a constitutionally required exemption for "[t]he property of counties, cities, and towns, owned and held only for public purposes." Decades ago, we interpreted this section broadly to exempt "any property publicly owned and held only for public purposes." *Lower Colo. River Auth. v. Chem. Bank & Trust Co.*, 190 S.W.2d 48, 52 (Tex. 1945). Thus, its scope is now similar to the public property clause of Article VIII section 2, which permits "the legislature . . . , by general laws, [to] exempt from taxation public property used for public purposes." TEX. CONST. art. VIII, § 2. One key difference between these provisions is that Article XI section 9 "exempts certain property by its own terms," while Article VIII section 2 "authorizes the Legislature to grant exemptions." *Leander Indep. Sch. Dist. v. Cedar Park Water Supply Co.*, 479 S.W.2d 908, 910 (Tex. 1972).

In *Leander ISD*, we noted the anomaly presented by interpreting these different provisions to have the same scope, but we declined to revisit our holding in *Chemical Bank*. *See id*. at 913. In any event, the Legislature has exercised its authority under the public property clause of Article VIII section 2 to grant an exemption that is similar in scope to Article XI section 9. It did so in section 11.11 of the Tax Code, which as we have said generally exempts "property owned by this state or a political subdivision of this state . . . if the property is used for public purposes." TEX. TAX CODE § 11.11(a); *see A&M Consol. ISD*, 184 S.W.2d at 915.[9]

---

[9] Section 11.11 does not enact a broader exemption than that authorized by the public property clause of Article VIII section 2. *See Dickison v. Woodmen of the World Life Ins. Soc'y*, 280 S.W.2d 315, 317 (Tex. Civ. App.—San Antonio 1955, writ ref'd) (per curiam) ("[W]hile the Legislature may restrict the exemption [authorized by Article VIII section 2], it may not broaden it beyond the constitutional confines, and any attempt to do so would be null and void.").

Both Article XI section 9 and section 11.11 expressly provide that property must be publicly "owned," and we have held that the public property clause of Article VIII section 2 similarly requires public ownership for property to qualify as exempt. *See Leander ISD*, 479 S.W.2d at 912. Odyssey argues that this requirement is met because section 12.128 of the Education Code "consider[s]" the private property it leased to be public property. Although we assume that Odyssey's reading of section 12.128 is correct, we have held that the Constitution does not allow the Legislature to give Odyssey a tax exemption by deeming the public to be the owner of a fee estate it does not actually own.

"Public ownership, for tax-exemption purposes, must grow out of the facts; it is a legal status, based on facts, that may not be created or conferred by mere legislative, or even contractual, declaration. If the state does not in fact own the taxable title to the property, neither the Legislature by statute, nor the [parties] by contract, may make the state the owner thereof by simply saying that it is the owner." *Tex. Tnpk. Co.*, 271 S.W.3d at 402.

This rule is not a quaint formalism; it is necessary to preserve our Constitution's structural limits on the Legislature's authority to create exemptions. If the Legislature could simply declare by statute that a taxpayer qualifies for an exemption regardless of whether it factually meets the constitutional criteria for such an exemption, the Constitution's goal of equal and uniform taxation would be undermined. *See* TEX. CONST. art. VIII, § 1(a). And the Constitution's provisions carefully defining which property the Legislature may exempt and nullifying laws that exempt other property would be dead letters. *E.g.*, *id.* § 2(a).

14

Here, Odyssey does not in fact own the fee estate being taxed, so it cannot qualify for the tax exemption on publicly owned property.[10]  Property leased is not property owned.  Odyssey argues that section 12.128 does not declare a falsehood; it simply mandates that public funds used to purchase or lease property retain their public character.  We agree that the Legislature may provide for the funds to retain their character.  But here, public funds were used only to acquire a leasehold interest, and not even Odyssey contends that section 12.128 divests the private owners of their unpurchased fee.  *Texas Turnpike* teaches that an exemption cannot be created indirectly by enacting a legal fiction that leasing privately owned property and putting it to a public use amounts to public ownership.

Indeed, *Texas Turnpike* presented stronger grounds for an exemption than we have in this case.  There, private toll road corporations placed their property in escrow for delivery to the State upon certain conditions, and both a statute and a contract declared that "equitable, beneficial, and superior title to" the property "shall be vested at all times in the State of Texas and shall constitute public property used for public purposes."  271 S.W.2d at 401.  We held that the property was not exempt as publicly owned property because the conditions for delivery might not occur, so the State did not in fact have equitable title.  *Id.* at 402–03.

Unlike in *Texas Turnpike*, nothing in Odyssey's lease agreement or section 12.128 of the Education Code purports to vest title in Odyssey or provides a mechanism for it to acquire title.  We assume that section considers the leased property public, just as the statute in *Texas Turnpike* declared that the escrowed property constituted public property.  But as we have explained,

---

[10] Because the property is not publicly owned, we need not consider whether (as our dissenting colleagues suggest) the LLCs' property is held only for public purposes or is used for such purposes—the second requirement for an exemption under Article XI section 9, the public property clause of Article VIII section 2, and Tax Code section 11.11.  *Cf. post* at __.

15

"[p]ublic ownership, for tax-exemption purposes, . . . may not be created or conferred by mere legislative, or even contractual, declaration." *Tex. Tnpk.*, 271 S.W.2d at 477.

### b. Public use is not a separate ground for exemption.

In the alternative, Odyssey argues that Article XI section 9 and Article VIII section 2 do not require public ownership to qualify for a tax exemption—public use is sufficient. Again, the constitutional text and our precedent foreclose Odyssey's position.

**i.** We begin with Article XI section 9, which provides in full:

> The property of counties, cities and towns, **owned** and held only for public purposes, **such as** public buildings and the sites therefor, fire engines and the furniture thereof, and all property used, or intended for extinguishing fires, public grounds **and all other property devoted exclusively to the use and benefit of the public** shall be exempt from forced sale and from taxation.

(Emphasis added). According to Odyssey, this section contains two separate exemptions in one sentence: (1) an exemption for property of counties, cities and towns—which *Chemical Bank* construed broadly to include all government entities—owned and held only for public purposes, with examples such as public buildings, fire engines, and public grounds; and (2) an exemption for property devoted exclusively to the use and benefit of the public, which need not be publicly owned. Odyssey contends that this second exemption applies here because its leased property is devoted exclusively to public use.

We disagree with Odyssey because its interpretation disregards the structure of the sentence as a whole and gives no meaning to the words "and all other property," which show that these two parts of the sentence are not separate. The subject of the sentence is "[t]he property of [government entities]," and the following words describe what subset of these entities' property "shall be exempt." We see no grammatical indication that "all other property devoted exclusively to the use and benefit of the public" need not also be "property of [government entities]."

16

In particular, the words immediately following the subject explain that the government entities' property must be "owned and held only for public purposes." The sentence then includes a list beginning with "such as," which gives non-exclusive examples of property of government entities owned and held only for public purposes. That list does not end with "public grounds," which is not preceded by the word "and," as the last item in a list would be. Rather, the words "and all other" signal that the following noun phrase is "additional" or "a further . . . thing of the type already mentioned."[11] Thus, "and all other" indicates that "property devoted exclusively to the use and benefit of the public" is the same type of property: part of the list of property of government entities that is owned and held only for public purposes,[12] not a separate ground for exemption that requires no public ownership.[13]

This reading does not render the phrase "all other property devoted exclusively to the use and benefit of the public" surplusage, as Odyssey contends. To the contrary, as we explained in *Chemical Bank*, the "all other property" phrase is what shows that the doctrine of *ejusdem generis*

---

[11] *Other*, Lexico.com, https://www.lexico.com/en/definition/other (last visited June 4, 2021); *Other*, MERRIAM-WEBSTER.COM DICTIONARY, https://www.merriam-webster.com/dictionary/other (last visited June 4, 2021). The dissent points out that "other" can also mean "not the same" or "different," *post* at __ & note 28, but that meaning generally applies when "other" follows "or"; it makes little sense when (as here) "other" follows "and." In addition, the Constitution's use of "all other"—a more inclusive variant of "another"—confirms that the meaning of "other" quoted in the text is correct. *See Another*, MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY 51 (11th ed. 2007) (most recent sense: "being one more in addition to one or more of the same kind"); *Another*, NEW OXFORD AMERICAN DICTIONARY 65 (3d ed. 2010) (primary definition: "used to refer to an additional person or thing of the same type as one already mentioned or known about").

[12] The series-qualifier canon also supports the conclusion that the adjectival clause requiring property to be "owned and held only for public purposes" modifies all of the following nouns, which are various types of property. *See* ANTONIN SCALIA & BRYAN A. GARNER, READING LAW 147 (2012).

[13] To facilitate comparison with the dissent's approach (*see* note 17, *infra*), here is a schematic view of our interpretation that section 9 creates a single exemption:
    [1]     The property of [government entities], owned and held only for public purposes, such as
            [a]     [i] public buildings . . . , [ii] fire engines . . . , and [iii] all property used, or intended for extinguishing fires,
            [b]     [i] public grounds and [ii] all other property devoted exclusively to the use and benefit of the public
    shall be exempt . . . .

17

does not apply to the list—i.e., that its scope is not limited to things similar to public buildings, fire engines, and public grounds. 190 S.W.2d at 51.

Moreover, we observed that the "all other property" phrase makes clear the full scope of the earlier phrase "held only for public purposes." *Id.* (citing *Corp. of San Felipe de Austin v. State*, 229 S.W. 845, 847 (Tex. 1921)). Under section 9, property owned and held only for public purposes includes not only (a) property owned and used by the government itself such as buildings and fire equipment, but also (b) property owned by the government and devoted exclusively to the use and benefit of the general public such as public grounds. *Id*. at 51–52 (explaining that exemption is not limited to government uses).[14] Recognizing that these pieces of section 9 work together to define a single ground for exemption, *Chemical Bank* restated the requirements for exemption as whether the property is "publicly owned *and* held only for public purposes *and* devoted exclusively to the use and benefit of the public." *Id.* at 52 (emphasis added). Or as we put the matter in *Galveston Wharf Co. v. City of Galveston*, section 9 defines "the character of property and uses to which it must be put, *when owned by municipal corporations*, to make it, within the meaning of the [constitution], property 'held only for public purposes, or devoted exclusively to the use and benefit of the public.'" 63 Tex. 14, 23 (1884) (emphasis added).

Odyssey's position—that section 9 creates a separate exemption for property devoted exclusively to public use that is not owned by a government entity—is contrary to these statements from *Chemical Bank* and *Galveston Wharf*. Moreover, it is contrary to *Texas Turnpike*, which holds unequivocally that "the property in question [must be] 'publicly owned' so as to be exempt

---

[14] *See also A&M Consol. ISD*, 184 S.W.2d at 915 ("It is not essential that [the publicly owned property] be used for governmental purposes. It is sufficient if it be property which all of the public has a right to use under proper regulations." (citations omitted)); *Corp. of San Felipe de Austin*, 229 S.W. at 847 (explaining that exemption is not limited to property "used for governmental purposes" but also includes "public property . . . devoted exclusively to a public use," such as a public wharf).

18

from taxes under Article XI, Section 9 of the constitution." 271 S.W.2d at 402. Thus, we concluded in *Texas Turnpike* that "the property involved in this case is not publicly owned and we need not inquire into the nature of its use," *id.* at 401, which would make no sense if exclusive public use were a separate ground for exemption.

Likewise, we have recognized in several other cases that both government ownership and exclusive public use are required to claim an exemption under Article XI section 9. *E.g.*, *Leander ISD*, 479 S.W.2d at 911 (explaining that the framers of Article XI section 9 contemplated its application "only to property owned by . . . political subdivisions provided it was devoted exclusively to a public use"); *State v. City of San Antonio*, 209 S.W.2d 756, 758 (Tex. 1948); *A&M Consol. ISD*, 184 S.W.2d at 915 ("The property in question is owned by the City of Bryan . . . and is therefore public property. Is it used for public purposes?"). That is no doubt why Odyssey can "point to no case that extends the exemption created in article XI, section 9 to property that is not publicly owned." *Hays Cnty. Appraisal Dist. v. Sw. Tex. State Univ.*, 973 S.W.2d 419, 422 (Tex. App.—Austin 1998, no pet.).

Put simply, reading section 9 to create a stand-alone exemption for private property used exclusively for public purposes would lead to the opposite outcome in cases such as *Texas Turnpike* (which held that a private nonprofit turnpike corporation that opened its toll roads to the public and placed title in escrow for the State could not claim a section 9 exemption[15]) and *Leander ISD* (which held that a private nonprofit corporation that supplied water to rural residents could not claim the exemption[16]). We decline to overrule these cases and extend the exemption as Odyssey requests.

---

[15] 271 S.W.2d at 401–03.

[16] 479 S.W.2d at 909, 912–13.

19

We also reject Odyssey's proposed extension because it would render the ownership requirements in Article XI section 9 and other parts of the Constitution surplusage. If the "all other property" phrase of section 9 created a stand-alone exemption, it would be so broad that even private landowners could exempt their property by "devot[ing] [it] exclusively to the use and benefit of the public" for the tax year at issue—for example, by giving a temporary conservation easement or free public access. Thus, there would never be a need to ask whether the property is "owned and held only for public purposes." TEX. CONST. art XI, § 9. The stand-alone exemption would also render pointless the Constitution's authorization of an exemption for property owned by a church or religious society and leased for use as a school. *Id*. art. VIII, § 2.

Given the many flaws in the broad exemption Odyssey proposes, our dissenting colleagues take a somewhat different approach: they would recognize three exemptions in section 9 rather than two and rewrite the third exemption to narrow its reach. In their view, section 9 provides that the following property shall be exempt: (1) property of government entities, owned and held only for public purposes (such as public buildings and fire engines); (2) public grounds; and (3) property devoted exclusively to the use and benefit of the public. *Post* at __. In addition, they would narrow Odyssey's proposal by amending the third exemption to require that the property be "used by a public entity exclusively for the public's benefit," *post* at __ (emphasis omitted), though they agree with Odyssey that this exemption does not require public ownership.[17]

---

[17] Schematically, the dissent reads section 9 as follows:
  [The following property shall be exempt:]
    [1]     The property of [government entities], owned and held only for public purposes, such as
        [a]     [i] public buildings . . . , [ii] fire engines . . . , and [iii] all property used, or intended for extinguishing fires,
    [2]     public grounds[,] and
    [3]     ~~all other~~ property [used by a government entity and] devoted exclusively to the ~~use and~~ benefit of the public[.]
        ~~shall be exempt . . . .~~

20

Most of our reasons for rejecting Odyssey's two-exemption interpretation apply equally to the dissent's three-exemption approach: it does not give meaning to the words "and all other property," it makes other parts of the Constitution surplusage, and its failure to require public ownership is contrary to all of our cases applying section 9.

Moreover, the dissent's insertion of a government-user requirement into the words "property devoted exclusively to the use and benefit of the public" is contrary to the Constitution's plain text. A government-user requirement cannot be implied from the word "public," which includes the people of a state as well as their government.[18] Thus, the property need not be used by the government; it can also qualify for exemption if it is used by the general public, as we recognized in holding that a wharf "all persons and vessels have the right to use" was "devoted exclusively to the use and benefit of the public." *Galveston Wharf*, 63 Tex. at 23. Nevertheless, the dissent says we should consult section 9's larger context to define "public" as "pertain[ing] only to governmental entities." *Post* at __. But as the dissent concedes with respect to its proposed separate exemption for "public grounds," this larger context requires that property be *owned* by a government entity as well as held by it only for a public purpose. *Post* at __.[19]

_____

[18] *See Public*, MERRIAM-WEBSTER.COM DICTIONARY, https://www.merriam-webster.com/dictionary/public (last visited June 4, 2021) (defining public as "of, relating to, or affecting all the people . . . of a nation or state," as well as "of or relating to a government").

[19] We also see no grammatical or definitional reason why "public grounds" and "all other property devoted exclusively to the use and benefit of the public" should be treated as separate exemptions. In addition to the inclusive meaning of "and all other" discussed above, we find it significant that these nouns are not separated by a comma, particularly given that section 9 uses commas before "and" elsewhere when it wishes to separate ideas. For example, a comma appears before the phrase "and all property used, or intended for extinguishing fires." The dissent emphasizes that a comma also follows this phrase, which it interprets as closing the list of examples of property of government entities owned and held only for public purposes. *Post* at __. As explained above, we agree that the following comma signals the end of the first part of the list of examples, which addresses property owned and used by the government itself. But the list continues with the next phrase "public grounds and all other property devoted exclusively to the use and benefit of the public," which addresses property owned by the government and devoted exclusively to the use and benefit of the general public. Of course, we recognize that commas were used differently when section 9 was originally written, and that a comma after "benefit of the public" would have helped emphasize— to modern readers—where the list ends. But the following verb phrase "shall be exempt" also signals the end of the list of nouns that are "property of [public entities]" covered by this exemption. Yet even if the dissent were correct

The dissent's creation of three stand-alone exemptions is also at odds with the structure and grammar of the section and ignores certain of its words. Section 9 does not begin by saying "the property that shall be exempt is" and then listing different categories of exemptions. Rather, the whole section provides that "The property of [government entities] . . . shall be exempt," and what comes in the ellipsis is further definition of what property of government entities is exempt. Thus, as we have said, "all other property devoted exclusively to the use and benefit of the public" also must be "the property of [government entities]" to qualify for an exemption. The meaning of "and all other property," which refers to a type of property already mentioned, confirms this interpretation. In contrast, the dissent's interpretation gives no meaning to the words "all other"; its reading would be the same if they did not exist.[20]

In sum, the dissent's need to alter section 9's wording to limit its proposed new exemption confirms that the section contains no separate exemption for property not owned by a government entity that is devoted exclusively to public use. And our cases uniformly hold that Article XI section 9 requires both government ownership and exclusive public use. Thus, it does not extend to the property leased by Odyssey.

**ii.** Turning to Article VIII section 2, we have likewise rejected Odyssey's position that the public property clause permits the Legislature to exempt property that is not publicly owned. In *Leander ISD*, we addressed a statute expressly exempting the property of a privately owned water supply company, which the company argued was a constitutionally authorized exemption of

---

that the list ended before public grounds, the result would be the same given that "public grounds" and "all other property" are not separate concepts. In light of the dissent's recognition that the "public" adjective preceding "grounds" requires public ownership, the inclusive "all other property" phrase must contain the same requirement.

[20] A simple example illustrates the point. If you say that "the colors in my crayon box such as baby blue, peach, and all other pastel colors are the best colors," you are saying in part that the other pastel colors referenced are in your box. One cannot disregard "the colors in my crayon box" without changing the meaning of the sentence. "All other" signals that you are not saying all pastel colors are the best colors; you are saying that all pastel colors of the type already mentioned—the colors in your box—are the best colors. The meaning of the sentence changes if the words are reordered so that it reads: "the best colors are baby blue, peach, and all other pastel colors."

"public property used for public purposes." 479 S.W.2d at 909–10. The trial court declared the statutory exemption invalid but the court of appeals disagreed, holding that the Legislature may exempt privately owned property if it is devoted to a purpose which gives it a public character. 469 S.W.2d at 20. We reversed, explaining that it is essential under Article VIII section 2 "that the property be used for public purposes but that in itself is not enough. The property must, wholly apart from its use, be 'public property.' In our opinion this means public ownership . . . ." 479 S.W.2d at 912. Thus, we held the Legislature had no power to exempt the property of a privately owned water supply company even though it was used for a public purpose. *Id.* at 910.

This decision not only confirms that the Constitution requires exempt property to be publicly owned, it also reveals the destructive potential of Odyssey's position that a statute can recharacterize property as public so that it qualifies for the exemption. If Odyssey were correct, the Legislature could have avoided the outcome in *Leander ISD* by framing its invalid exemption indirectly rather than directly. Rather than passing a statute exempting the water supply company's property, the Legislature could simply have declared that the property "is considered to be public property for all purposes," making it eligible for the existing constitutional and statutory exemptions for publicly owned property. We decline to gut the Constitution's careful limits on legislative exemptions by holding that the Legislature can employ a legal fiction to accomplish indirectly what it cannot do directly. *See Dickison*, 280 S.W.2d at 318 (applying *Texas Turnpike* to deny tax exemption for an insurance company that statute declared to be a charity because "[t]he Legislature could not by legislative fiat declare that to be true which is not in fact true, and thus enlarge the tax exemption provided for in Art. 8, Sec. 2").

For these reasons, we hold that our Constitution does not permit Odyssey to claim an exemption under Article XI section 9 or under the public property clause of Article VIII section 2

23

and Tax Code section 11.11 because Odyssey is not actually the fee owner of the property. Accepting Odyssey's position would require us to overrule *Texas Turnpike*, *Leander ISD*, and other cases, which we conclude are well grounded in our Constitution's text and structure.

### 2. Exemptions for certain school property

Odyssey also contends that it is entitled to an exemption under a different clause of Article VIII section 2 relating to school property. Article VIII section 2 has two clauses that permit exemptions for property used for school purposes; Odyssey relies on one that addresses school buildings and furniture. That clause authorizes the Legislature to exempt "all buildings used exclusively and owned by persons or associations of persons for school purposes and the necessary furniture of all schools." TEX. CONST. art. VIII, § 2(a).[21]

The Legislature enacted section 11.21 of the Tax Code to create this exemption, but Odyssey does not seek an exemption under that statute—perhaps because it is seeking to exempt real property rather than just buildings and furniture. Instead, Odyssey argues that section 12.128 of the Education Code is an additional tax exemption enacted under the authority of this constitutional clause. We note that section 12.128 does not mention an exemption, nor does it refer to school buildings and furniture. Yet even assuming that section 12.128 could be characterized as an exemption, "it may not broaden [that exemption] beyond the constitutional confines" of the clause. *Dickison*, 208 S.W.2d at 317. Because we conclude that the constitutional clause quoted above does not authorize the exemption Odyssey seeks, we need not decide whether section 12.128 creates such an exemption.

---

[21] The clause goes on to authorize an exemption for "property used exclusively and reasonably necessary in conducting any association engaged in promoting the religious, educational and physical development of boys, girls, young men or young women operating under a State or National organization of like character." TEX. CONST. art. VIII, § 2. But Odyssey does not contend that this part of the clause applies, nor does the record indicate that Odyssey promotes the religious development of its students.

24

Odyssey argues that this constitutional clause permits an exemption for property used by a non-profit school regardless of whether that school is public, and it does not require that the owners and users be the same people. Although we agree with Odyssey's first argument, our cases addressing its second argument hold precisely the opposite.

In *Red v. Morris*, we agreed with the court of appeals that "in order to exempt the property from taxation by reason of its use for school purposes, it must also be owned for such purposes." 10 S.W. 681, 682 (Tex. 1889). Put another way, the property "must be used exclusively by persons or associations of persons who own [it]." *Smith v. Feather*, 234 S.W.2d 418, 421 (Tex. 1950) (holding lack of ownership by one of the people who used property as school destroyed exemption). *Red* pointed out that the operative language of the constitutional provision and the statute creating the exemption was the same in requiring both ownership and use. 10 S.W. at 682; *see* TEX. TAX CODE § 11.21(a). And it addressed how this rule applies in the lease context we have here, explaining that "the legislature meant, by the employment of the terms [requiring ownership], to prevent the owners of the property from taking advantage of the exemption, when they leased the property to others for profit, to be used by the latter for the maintenance of schools." 10 S.W. at 682; *see also Smith*, 234 S.W.2d at 421 ("Had [respondents] rented the building to others who used it exclusively for school purposes, it would not be exempt.").

In this case, the property is owned and used by different entities: Odyssey uses the property exclusively for school purposes, but the taxable fee is owned by two LLCs based in Florida. The LLCs lease the property to Odyssey for profit and are not involved in operating the school. Under these circumstances, our cases are clear that Odyssey cannot claim the constitutional exemption for school buildings and furniture.

Significantly, Article VIII section 2 was amended in 2003 to add a second school-related clause, and it permits an exemption for real property leased for use as a school—the very situation presented here. But Odyssey cannot claim this exemption because it applies only if the leased property "is owned by a church or by a strictly religious society." TEX. CONST. art. VIII, § 2.[22]

The Texas Constitution is frequently amended. *See Villarreal*, __ S.W.3d at __. Indeed, Article VIII section 2 has been amended ten times since 1876—most recently in 2019. If the people of Texas wanted to adopt a broad tax exemption for property leased for educational purposes, they certainly could have done so. Instead, they chose to limit the availability of that exemption to a narrow class of owners. It is not our role as judges to broaden the exemption for them. *See id.*

\*　　\*　　\*

We recognize the practical undesirability of charter schools using state funds provided for education to pay local taxes. But this is not a case where government is "engag[ing] in the senseless process of taxing itself." *Chem. Bank*, 190 S.W.2d at 51. Galveston County is taxing private LLCs because they own the underlying property in fee; it is not taxing Odyssey's leasehold interest. Odyssey is paying the LLCs' taxes only because it voluntarily undertook to do so in its sublease agreement.

We also note that the Legislature has chosen to tax even publicly owned property that benefits education in a variety of situations. *See, e.g.*, TEX. TAX CODE § 11.11(b) ("Land owned by the Permanent University Fund is taxable for county purposes."), (c) ("Agricultural or grazing land owned by a county for the benefit of public schools . . . is taxable for all purposes."). More

---

[22] In full, the clause permits an exemption for "any property that is owned by a church or by a strictly religious society and is leased by that church or strictly religious society to a person for use as a school, as defined by Section 11.21, Tax Code, or a successor statute, for educational purposes." TEX. CONST. art. VIII, § 2(a).

26

specifically, the Legislature provided for payment of taxes with public funds in the very situation we have here: "[f]unds received by a charter holder" may be used "to pay property taxes imposed on an instructional facility." TEX. EDUC. CODE § 12.106(f). If the Legislature did not intend to permit such a result, section 12.106(f) would not exist.

Finally, we are aware that other charter schools have structured their leases in different ways that some courts have held qualifies the property for an exemption. For example, the Dallas Court of Appeals held that when a charter school entered into a lease that included a unilateral purchase option, it acquired equitable title to the property and could claim an exemption under section 11.11 of the Tax Code. *Dall. Cent. Appraisal Dist. v. Int'l Am. Educ. Fed'n*, 618 S.W.3d 375, 379 (Tex. App.—Dallas 2020, no pet.). In this case, however, Odyssey is the lessee (indeed the sublessee) rather than the owner, and its lease expressly provides that there is no purchase option. Thus, Odyssey does not hold equitable title to the leased property and is not entitled to an exemption. *See Tex. Tnpk. Co.*, 271 S.W.2d at 402 ("If the agreement[] . . . would not create taxable ownership in a private grantee, it is difficult to see how [it] could create a tax-exempt ownership in the State of Texas.").

### CONCLUSION

Odyssey contends it is entitled to an exemption from ad valorem taxes it contractually agreed to pay on privately owned property it leases for a public charter school. We conclude that the plain text and structure of the Texas Constitution do not authorize such an exemption. Holding otherwise would require us to overturn several of our decisions and accept a legal fiction regarding ownership of the property that would undermine the constitutional structure of our tax system. We therefore overrule Odyssey's issues and affirm the court of appeals' judgment denying the requested exemption.

_____
J. Brett Busby
Justice

Opinion delivered: June 11, 2021