# IN THE SUPREME COURT OF TEXAS

Nos. 10-0683, 10-0714

AHF-ARBORS AT HUNTSVILLE I, LLC, PETITIONER,
AHF-ARBORS AT HUNTSVILLE II, LLC, PETITIONER,

v.

WALKER COUNTY APPRAISAL DISTRICT, RESPONDENT

ON PETITION FOR REVIEW FROM THE
COURT OF APPEALS FOR THE TENTH DISTRICT OF TEXAS

**Argued December 6, 2011**

JUSTICE HECHT delivered the opinion of the Court, in which CHIEF JUSTICE JEFFERSON, JUSTICE WAINWRIGHT, JUSTICE MEDINA, JUSTICE GREEN, JUSTICE JOHNSON, JUSTICE GUZMAN and JUSTICE LEHRMANN joined.

JUSTICE WILLETT filed a dissenting opinion.

A community housing development organization ("CHDO") that meets certain statutory requirements is exempt from *ad valorem* taxation on property it "owns".[1] The principal issue in these two consolidated cases is whether a CHDO must have legal title to property to qualify for the exemption. We hold that equitable title is sufficient and accordingly reverse the judgment of the court of appeals[2] and remand the cases to that court.

---

[1] TEX. TAX CODE § 11.182(b).

[2] ___ S.W.3d ___ (Tex. App.–Waco 2010) (mem. op.).

**I**

**A**

CHDOs are a creation of the Cranston-Gonzalez National Affordable Housing Act of 1990, as amended ("NAHA" or "the Act").[3] NAHA authorized the United States Department of Housing and Urban Development's HOME Investment Partnerships Program, which uses block grants to leverage local government and private funds to provide decent and affordable housing for low-income families.[4] A portion of the grants must be set aside for CHDOs.[5] As defined by Section 12704 of the Act, a CHDO is a nonprofit corporation[6] that

> (A)    has among its purposes the provision of decent housing that is affordable to low-income and moderate-income persons;

> (B)    maintains, through significant representation on the organization's governing board and otherwise, accountability to low-income community residents

---

[3] 42 U.S.C. §§ 12701-12899i (2012).

[4] *Id.* § 12722 ("The purposes of this subchapter are — (1) to expand the supply of decent, safe, sanitary, and affordable housing, with primary attention to rental housing, for very low-income and low-income Americans; . . . (3) . . . (C) to promote the development of partnerships among the Federal Government, States and units of general local government, private industry, and nonprofit organizations able to utilize effectively all available resources to provide more of such housing; . . . (6) to expand the capacity of nonprofit community housing development organizations to develop and manage decent, safe, sanitary, and affordable housing . . . ."); 24 C.F.R. § 92.1 ("In general, under the HOME Investment Partnerships Program, HUD allocates funds by formula among eligible State and local governments to strengthen public-private partnerships and to expand the supply of decent, safe, sanitary, and affordable housing, with primary attention to rental housing, for very low-income and low-income families."). The program is explained on HUD's webpage at http://www.hud.gov/offices/cpd/affordablehousing/programs/home/.

[5] 42 U.S.C. § 12771(a) (2012).

[6] The Act defines a "nonprofit corporation" as "any private, nonprofit organization (including a State or locally chartered, nonprofit organization) that — (A) is organized under State or local laws, (B) has no part of its net earnings inuring to the benefit of any member, founder, contributor, or individual, (C) complies with standards of financial accountability acceptable to the Secretary, and (D) has among its purposes significant activities related to the provision of decent housing that is affordable to low-income and moderate-income persons." *Id.* § 12704(5).

and, to the extent practicable, low-income beneficiaries with regard to decisions on the design, siting, development, and management of affordable housing;

(C)     has a demonstrated capacity for carrying out activities assisted under this Act; and

(D)     has a history of serving the local community or communities within which housing to be assisted under this Act is to be located.[7]

Section 11.182 of the Texas Tax Code exempts a CHDO's property from *ad valorem* taxation. The basic exemption is set out in Subsection (b), which states:

An organization is entitled to an exemption from taxation of improved or unimproved real property it owns if the organization:

(1)     is organized as a community housing development organization;

(2)     meets the requirements of a charitable organization provided by Sections 11.18(e) and (f);

(3)     owns the property for the purpose of building or repairing housing on the property to sell without profit to a low-income or moderate-income individual or family satisfying the organization's eligibility requirements or to rent without profit to such an individual or family; and

(4)     engages exclusively in the building, repair, and sale or rental of housing as described by Subdivision (3) and related activities.[8]

Section 11.182 imposes additional requirements and restrictions on the exemption. Subsection (c) requires that a CHDO's property must be rented or offered for rent without profit to low- or

---

[7] *Id.* § 12704(6). The operation of CHDOs is described more fully in U.S. DEP'T OF HOUS. & URBAN DEV., COMMUNITY PLANNING AND DEVELOPMENT, NOTICE CPD-97-11 (Oct. 8, 1997), available at http://www.hud.gov/offices/cpd/affordablehousing/programs/home/topical/chdo.cfm.

[8] TEX. TAX CODE § 11.182(b).

moderate-income individuals within three years of its acquisition,[9] and Subsection (d) requires some CHDOs to spend forty percent of the taxes they would pay if not exempt for eligible persons in the county.[10] Subsection (g) imposes an annual audit requirement.[11] Subsection (j) restricts an exemption to property that was exempt for part of 2003.[12]

**B**

AHF-Arbors at Huntsville I, LLC, and AHF-Arbors at Huntsville II, LLC (collectively, "the Arbors"), each owns as its sole asset an apartment complex in Huntsville. The sole member of each limited liability company is Atlantic Housing Foundation, Inc., a South Carolina nonprofit corporation exempt from federal income taxation under Section 501(c)(3) of the United States Internal Revenue Code and certified as a CHDO by the Texas Department of Housing and Community Affairs ("TDHCA"). For federal income tax purposes, Atlantic and the Arbors are

---

[9] *Id.* § 11.182(c) ("Property owned by the organization may not be exempted under Subsection (b) after the third anniversary of the date the organization acquires the property unless the organization is offering to rent or is renting the property without profit to a low-income or moderate-income individual or family satisfying the organization's eligibility requirements.").

[10] *Id.* § 11.182(d) ("A multifamily rental property consisting of 36 or more dwelling units owned by the organization that is exempted under Subsection (b) may not be exempted in a subsequent tax year unless in the preceding tax year the organization spent, for eligible persons in the county in which the property is located, an amount equal to at least 40 percent of the total amount of taxes that would have been imposed on the property in that year without the exemption on social, educational, or economic development services, capital improvement projects, or rent reduction. This subsection does not apply to property acquired by the organization using tax-exempt bond financing after January 1, 1997, and before December 31, 2001.").

[11] *Id.* § 11.182(g) ("To receive an exemption under Subsection (b) or (f), an organization must annually have an audit prepared by an independent auditor. The audit must include a detailed report on the organization's sources and uses of funds. A copy of the audit must be delivered to the Texas Department of Housing and Community Affairs and to the chief appraiser of the appraisal district in which the property subject to the exemption is located.").

[12] The Legislature imposed this restriction in 2003 and created a new exemption for organizations constructing or rehabilitating low-income housing. Act of June 1, 2003, 78th Leg., R.S., ch. 1156, §§ 1-3, 2003 Tex Gen. Laws 3256, adopting TEX. TAX CODE §§ 11.182(j), 11.1825, and 11.1826.

4

treated as a single entity.[13] The Arbors applied to the Walker County Appraisal District for a tax exemption for their property for 2003 and subsequent years. The District denied their applications, and they sued.[14]

The Arbors moved for summary judgment based on the affidavits of Atlantic's secretary and controller, Carol McBride, and a member of the apartments' management boards, Patricia Wuensche. Attached to McBride's affidavit were copies of: a letter from the Internal Revenue Service notifying Atlantic that it had been determined to be exempt from federal income taxation as a 501(c)(3) organization; certifications of Atlantic as a CHDO by the Texas Department of Housing and Urban Development and as exempt from franchise taxes by the Texas Comptroller of Public Accounts; articles creating Atlantic and documents showing its authority to do business in Texas; and articles creating the Arbors and regulations governing their affairs. Although the Arbors are not TDHCA-certified CHDOs as Atlantic is, they argued that they are indistinct from Atlantic, which operates the apartments through them in compliance with all requirements of Section 11.182.

The District objected to both affidavits as conclusory, and to McBride's affidavit as hearsay and beyond McBride's personal knowledge. The District responded to the Arbors' motion and moved for summary judgment itself. The District contended that the Arbors had failed to adduce any evidence that they were organized and operated as charitable organizations, that they were organized as CHDOs under NAHA Section 12704, or that they met the requirements of Section

---

[13] With exceptions not relevant here, "a domestic eligible entity is . . . [d]isregarded as an entity separate from its owner if it has a single owner." 26 C.F.R. § 301.7701-3(b) (2012).

[14] Though each of the Arbors filed its own lawsuit, the two actions were prosecuted identically, and therefore we refer to the proceedings as if they were one. The court of appeals issued one opinion for both cases.

11.182(b), (c), (d), (g), and (j). The trial court denied the Arbors' motion, struck their evidence, and granted the District's motion.

The court of appeals affirmed, holding only that the Arbors had produced no evidence showing that they had complied with one portion of Section 11.182(g).[15] This, the court concluded, was sufficient to entitle the District to summary judgment without considering whether there was evidence that the Arbors met the other requirements for an exemption for the apartments.

We granted both of the Arbors' petitions for review.[16] We consider first whether the court of appeals' holding was correct. Concluding that it was not, we then turn to the principal issue disputed by the parties though not addressed by the court of appeals: whether Atlantic's ownership of the Arbors qualifies their property for a tax exemption under Section 11.182(b). We remand the case to the court of appeals for consideration of the remaining issues.

**II**

Section 11.182(g) states:

> To receive an exemption under Subsection (b) or (f), an organization must annually have an audit prepared by an independent auditor. The audit must include a detailed report on the organization's sources and uses of funds. A copy of the audit must be delivered to the Texas Department of Housing and Community Affairs and to the chief appraiser of the appraisal district in which the property subject to the exemption is located.

---

[15] ___ S.W.3d ___ (Tex. App.–Waco 2010).

[16] 54 Tex. Sup. Ct. J. 1554 (Aug. 22, 2011). The Arbors each filed a separate petition for review, but because the petitions and the District's responses are essentially identical in both cases, we have consolidated the cases for decision.

The court of appeals held that because the Arbors offered no evidence that they delivered a copy of their annual audit to TDHCA, they failed to show that they qualified for an exemption. But Section 11.182(g) plainly conditions an exemption only on the preparation of an audit — something that must be done "[t]o receive an exemption". The statute does not state that a failure to meet its other requirements — that the audit be detailed, that it reflect both the sources and uses of funds, and that it be delivered both to TDHCA and the chief appraiser — likewise results in the denial of an exemption.

We confronted a similar situation in *Flores v. Millenium Interests, Ltd.*[17] Section 5.077(a) of the Texas Property Code requires that a person who sells a residence by executory contract (sometimes called a contract for deed) must provide the purchaser with a statement every January.[18] Subsections (c) and (d) impose liquidated damages on sellers who "fail[] to comply with Subsection (a)".[19] Subsection (b) provides that an annual statement "must include" specific information regarding amounts paid and remaining due under the contract.[20] The purchasers in *Flores* received annual statements but claimed liquidated damages because some of the information required by Subsection (b) was omitted.[21] The omissions were minor, and the purchasers did not claim to have been prejudiced in any way. We held that the statute tied the right to liquidated damages "to timely

---

[17] 185 S.W.3d 427 (Tex. 2005).

[18] TEX. PROP. CODE § 5.077(a).

[19] *Id.* § 5.077(c)-(d).

[20] *Id.* § 5.077(b).

[21] *Flores*, 185 S.W.3d at 430-431.

7

delivery of the annual statement, but not its contents."[22] Only a statement so deficient as to be no statement at all would fail to comply with Section 5.077(a).[23]

Under Section 11.182(g), the failure to conduct an audit is understandably fatal to a claim for exemption, but deficiencies in the contents or delivery are matters that presumably may be corrected. Which is not to say that the requirements are unimportant. According to the District, delivery of an applicant's audit to TDHCA is critical because that agency administers NAHA funds and has the ability to analyze whether an organization is complying with federal requirements as well as the requirements for a state tax exemption. We do not disagree. Indeed, Section 11.182(g) makes delivery of the audit to TDHCA mandatory. But where, as here, the statute "does not specify the consequences for noncompliance[,] . . . we have looked to its purpose for guidance."[24]

The District argues, and we agree, that the statute requires applicants' audits to be delivered to TDHCA so that chief appraisers will have the benefit of that agency's review. If an appraisal district did not believe that review necessary in a particular case, it could grant an exemption based on its own review. If it needed the review, the district could delay action on the application until the requirement has been met. But the statute does not authorize a district to deny an exemption for non-delivery of an audit to TDHCA. The purpose of the statute is to provide a chief appraiser substantive

---

[22] *Id.* at 433.

[23] *Id.*

[24] *Hines v. Hash*, 843 S.W.2d 464, 468 (Tex. 1992); *accord In re Francis*, 186 S.W.3d 534, 540 (Tex. 2006); *Hubenak v. San Jacinto Gas Transmission Co.*, 141 S.W.3d 172, 184 (Tex. 2004); *Helena Chem. Co. v. Wilkins*, 47 S.W.3d 486, 494 (Tex. 2001).

information to use in processing an application for exemption. Withholding a ruling pending delivery of an audit to TDHCA serves the statute's purpose; denying an exemption does not.

In the District's view, noncompliance with any requirement of Section 11.182(g) results in the denial of an exemption. Thus, an appraisal district could deny an exemption on the basis that an audit report was insufficiently detailed, if only in minor, even irrelevant, respects. This was essentially the same argument that we rejected in *Flores* because it served to impede rather than further the statute's purpose. We apply the same reasoning here.

Accordingly, we conclude that the District is not entitled to summary judgment denying the Arbors' requested tax exemption for lack of evidence of compliance with the audit delivery requirement of Section 11.182(g).

## III

The Arbors' central argument was not addressed by the court of appeals. Section 11.182(b), as noted above, allows "[a]n organization" a tax exemption on "property it owns" if, as relevant here, it is "organized as a [CHDO]" and "owns the property for the purpose of" providing low- or moderate-income housing without profit.[25] The Arbors contend that their apartments are exempt property because ownership, within the meaning of the statute, includes equitable title, which Atlantic, a TDHCA-certified CHDO, holds by virtue of its complete control of the Arbors. The District argues that ownership means legal title, and because there is no evidence that the Arbors are CHDOs themselves, they are not entitled to an exemption.

---

[25] TEX. TAX CODE § 11.182(b).

The text of Subsection (b) does not suggest a resolution of the parties' dispute. But Subsection (e) provides that in certain instances, property "owned by a limited partnership" may be tax-exempt if 100 percent of its general partner is controlled by a CHDO meeting the requirements of Subsection (b). The meaning of "owned" is no clearer in (e) than in (b), but even assuming "owned" requires legal title, Subsection (e) would still allow a CHDO an exemption for property to which it does not hold legal title, and may not completely control, to the extent limited partners may participate.[26] We are unconvinced that limited partnerships are the one exception to Subsection (b)'s requirement of legal ownership by a CHDO and see no reason to distinguish between a general partner's control of a limited partnership and other types of corporate control over related entities, such as Atlantic's complete ownership of its subsidiaries in this case. The stronger argument is that Subsection (e) demonstrates that property may be tax-exempt even if a CHDO is only a participant in tiered ownership. The purpose of Subsection (e) is not to carve out an exception for non-CHDO limited partnerships but to limit exemptions for limited partnerships to those in which the general partner is wholly CHDO-owned.

Subsection (e) informs our construction of Subsection (b), three sentences earlier. Both provide a tax exemption for the CHDO-controlled use of property for low- and moderate-income housing without profit. Equitable ownership — the present right to compel legal title[27] — assures greater CHDO control under Subsection (b) than required by Subsection (e).

---

[26] *See* TEX. BUS. ORGS. CODE § 153.102(a) ("A limited partner is not liable for the obligations of a limited partnership unless . . . the limited partner participates in the control of the business.").

[27] *Carmichael v. Delta Drilling Co.*, 243 S.W.2d 458, 460 (Tex. Civ. App.–Texarkana 1951, writ ref'd) ("An equitable title is the present right to the legal title.").

Moreover, this construction, as the Arbors argue, acknowledges the realities of the commercial housing industry. We have observed that in many instances, lenders require that property be purchased by a single-asset entity "so that in the event of default, the collateral can be recovered more easily than from a debtor with multiple assets and multiple creditors."[28] Often, the timing of property acquisition does not allow the acquiring entity to obtain a federal tax exemption or otherwise qualify as a CHDO. When the entity is wholly owned by a CHDO, use of the property for low-income housing is assured. Also, tiered ownership allows greater flexibility for investors, encouraging the involvement of private funds in developing low-income housing, which was part of NAHA's purpose in creating the concept of CHDOs.[29] And, of course, the *ad valorem* tax exemption allows charitable organizations to operate with less revenue.

The District argues that this construction of Section 11.182(b) violates the rule that statutes conferring tax exemptions must be strictly construed.[30] But strictly construing Subsection (b) does not require us to ignore Subsection (e) or the purpose of the exemption. The District points to legislative history surrounding the enactment of Subsection (j), suggesting that the Legislature made the exemption unavailable after 2003 because property was being removed from tax rolls with no

---

[28] *Basic Capital Mgmt., Inc. v. Dynex Commercial, Inc.*, 348 S.W.3d 894, 897 (Tex. 2011).

[29] 42 U.S.C. § 12722(c) (2012).

[30] *Bullock v. Nat'l Bancshares Corp.*, 584 S.W.2d 268, 271-272 (Tex. 1979) ("Statutory exemptions from taxation are subject to strict construction since they are the antithesis of equality and uniformity and because they place a greater burden on other taxpaying businesses and individuals. An exemption cannot be raised by implication, but must affirmatively appear, and all doubts are resolved in favor of taxing authority and against the claimant. Simply stated, the burden of proof is on the claimant to clearly show that it comes within the statutory exemption." (citations omitted)).

real benefit to the community. But any reservations the Legislature may eventually have had about the wisdom of Section 11.182's exemption do not alter the meaning of the statutory text.

The District argues that since taxation ordinarily falls only on legal ownership,[31] exemptions should benefit only legal owners. While the argument has the virtue of symmetry, the Legislature is not so constrained in authorizing tax exemptions. The District also argues that entities that are separate for purposes of imposing liability should not be treated as one for purposes of qualifying for tax exemptions. But federal tax law disregards the separate identity of some entities,[32] as it does with Atlantic and the Arbors, and there is no reason why Section 11.182 should not do the same.

In five cases, the courts of appeals have differed in their construction of Section 11.182. In the first, *Orange County Appraisal District v. Agape Neighborhood Improvement, Inc.*, the court allowed an exemption for property, title to which was held by a CHDO's wholly-owned subsidiary, not unlike the situation presented here.[33] The court's analysis appears to have been consistent with ours today. But in the next case, *American Housing Foundation v. Brazos County Appraisal District*, the court denied an exemption for property held by a limited partnership with a CHDO-owned general partner.[34] Then in *TRQ Captain's Landing v. Galveston Central Appraisal District*, the court upheld an exemption for a limited partnership that was wholly owned by a limited liability

---

[31] *Childress Cnty. v. State*, 92 S.W.2d 1011, 1015 (Tex. 1936) ("The person having legal title to property is generally considered to be the owner thereof for purposes of taxation.").

[32] *See supra* note 13.

[33] 57 S.W.3d 597, 601-602 (Tex. App.–Beaumont 2001, pet. denied).

[34] 166 S.W.3d 885, 889 (Tex. App.–Waco 2005, pet. denied). The court concluded that Section 11.182(e) did not apply because the apartments at issue were constructed before that provision's effective date. *Id.*

12

corporation with a CHDO as its only member.[35] The court held that the CHDO had equitable title to the property of its subsidiary's subsidiary, that such ownership satisfied Section 11.182(b), and that the CHDO's exemption was imputed to the legal owner, the taxpayer.[36] The court's analysis was essentially the same as ours here.

But the next year, the court in *Jim Wells County Appraisal District v. Cameron Village, Ltd.* disagreed.[37] There, a CHDO owned only the limited partnership's general partner, not the limited partner, too, as in *TRQ Captain's Landing*, but the court did not base its decision on that distinction. Rather, it concluded that a "CHDO must be the record owner of the property to qualify for the exemption under section 11.182(b)."[38] On similar facts, in *Harris County Appraisal District v. Primrose Houston 7 Housing L.P.*, a different panel of the same court that decided *TRQ Captain's Landing* denied an exemption to a limited partnership because its CHDO-general partner owned only a tiny fraction of the limited partnership interest.[39] Unlike the court in *Cameron Village*, the *Primrose* court agreed with *TRQ Captain's Landing* that "CHDO status, as a necessary condition to receiving an exemption under section 11.182(b), can be imputed to non-CHDO subsidiaries that are wholly owned and controlled by a CHDO",[40] but distinguished that case because there, the

---

[35] 212 S.W.3d 726 (Tex. App.–Houston [1st Dist.] 2006, pet. granted). Our consideration of the petition in *TRQ Captain's Landing* has been abated due to respondent's bankruptcy.

[36] *Id.* at 732.

[37] 238 S.W.3d 769 (Tex. App.–San Antonio 2007, pet. denied).

[38] *Id.* at 778.

[39] 238 S.W.3d 782 (Tex. App.–Houston [1st Dist.] 2007, pet. denied).

[40] *Id.* at 787.

CHDO also owned the limited partner. Without such control, the court concluded, the CHDO-general partner did not have equitable title to the limited partnership's property.[41]

We agree with the reasoning in *TRQ Captain's Landing*, which, as we have explained, is compelled by the text of Section 11.182 and consistent with its purpose. The dissent in that case argued that the majority would allow mere investors in an entity to benefit from a tax exemption on property the entity can control.[42] But this is true only when the investors are CHDOs. As long as a CHDO has equitable title to property, we see no reason to treat investors *with* a CHDO differently from investors *in* the CHDO. Indeed, as we have observed already, CHDOs were created to draw private investments into public housing.

Accordingly, we hold that a CHDO's equitable ownership of property qualifies for an exemption under Section 11.182(b).

**IV**

We apply this rule to the situation before us. Each of the Arbors is a limited liability company with a single asset — the apartments — and a single member — Atlantic, a CHDO. Each of the Arbors has managers, who, under Texas law, are the governing authority of the company.[43]

---

[41] *Id.* The court did not explain why the general partner lacked control of the limited partnership, nor why Section 11.182(e) was not considered.

[42] *TRQ Captain's Landing*, 212 S.W.3d at 740-741 (Bland, J., dissenting).

[43] TEX. BUS. ORGS. CODE § 101.251 ("The governing authority of a limited liability company consists of . . . the managers of the company, if the company's certificate of formation states that the company will have one or more managers . . . .").

But managers serve at the pleasure of the members.[44] Thus, Atlantic has complete control over the Arbors and equitable title to their property — the power to compel transfer of legal title. This ownership satisfies the requirement of Section 11.182(b) that exempt property be owned by a CHDO. For purposes of a federal income tax exemption, Atlantic and the Arbors are treated as one. For the same reason, the *ad valorem* exemption is imputed to the Arbors.

The parties raise many other issues. The District contends that the Arbors are not charitable organizations, that their apartments are not used for low- and moderate-income housing, and that other requirements of Section 11.182 as well as federal law have not been met. The Arbors argue that the trial court erred in striking their evidence and in concluding that no evidence supported their applications for exemptions. We express no view on any of these issues. We reverse the judgment of the court of appeals and remand the case to that court for further consideration.

_____
Nathan L. Hecht
Justice

**OPINION DELIVERED:** June 8, 2012

---

[44] *Id.* § 101.304 ("[A] manager of a limited liability company may be removed, with or without cause, at a meeting of the company's members called for that purpose.").