# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

## NO. 03-23-00764-CV

---

**South ½ Block 8 Venture, Appellant**

**v.**

**Travis Central Appraisal District, Appellee**

---

**FROM THE 353RD DISTRICT COURT OF TRAVIS COUNTY**
**NO. D-1-GN-21-001040, THE HONORABLE MADELEINE CONNOR, JUDGE PRESIDING**

---

## O P I N I O N

This case concerns whether a church's equitable ownership and use of real property can exempt that tract from property tax when another entity is the legal or deeded owner of that tract. South ½ Block 8 Venture (Venture) claims that one of its partners—a church—has equitable title to a parcel it conveyed to the Venture because the church can force the Venture to convey legal title to the parcel back to the church. The Venture contends that the trial court erred by granting Travis Central Appraisal District's (TCAD's) summary-judgment motion made on grounds that the parcel is not owned by a religious organization. We will reverse the trial court's judgment and render judgment that the Church's equitable ownership of one of the Venture's parcels of real estate plus the Church's use of that parcel for religious purposes made it fully exempt from taxation under the religious-organizations exemption. *See* Tex. Tax Code § 11.20.

## BACKGROUND

The First Church of Christ, Scientist, Austin, Texas ("Church"), purchased a building at 104 Trinity Street in Austin in 1993 ("the Parcel"). The Church converted the building into a Christian Science Reading Room. A Church representative averred that the Church creates reading rooms as quiet places for reading, study, prayer, and interactions between the public and Christian Science. The denomination requires that each branch have a reading room. TCAD granted the Church a religious-organizations exemption from property taxes on the Parcel for its use of the building as the Reading Room. *See* Tex. Tax Code § 11.20.

In 2012, the Church formed the Venture, a partnership with two owners of adjacent lots, whose land comprised the south half of Block 8 of the original City of Austin. Under the partnership agreement, the partners were to convey to the Venture ownership of their land so the Venture could "lease, sell, or otherwise turn [the south half of Block 8] into a joint income producing property." Each partner retained the power to manage the parcel each contributed to the Venture, including making short-term rentals of the parcel they contributed until the partners all agreed to a plan for the grouped properties. Each partner was liable for the costs and expenses of operating the tract it contributed to the Venture and liable for acts on the tract each contributed. The contributing owner had to indemnify other partners from any liability imposed on other partners arising from the use of the contributor's tract. If the Venture's properties were sold as a unit, the Church was to receive a one-sixth share of the net income or loss.

Any partner could withdraw at any time from the Venture on ten days' written notice; the agreement did not require a reason for the withdrawal and did not establish a penalty for the withdrawal. On the effective date of withdrawal, the Venture was required to distribute to the withdrawing partner the amounts and property the partner would have received if the Venture

2

had wound up and liquidated that day. Such a windup and liquidation would require the Venture to "convey back to the contributing partner the interest in the south ½ of Block 8 that the partner conveyed to the partnership if the interest is still held" by the Venture.

In late 2014, the Church and the other Venture partners conveyed their tracts to the Venture. The Parcel conveyed by the Church was leased by the Venture to the Church, which continued to operate the Reading Room there until June 15, 2017.

The Church applied for a religious-organizations exemption on the Parcel in 2015. Though TCAD initially denied that application, it reversed the denial and approved the exemption for 2015. The exemption remained in effect until 2020, when TCAD revoked the exemption retroactively to 2015. The revocation letter, sent to the Venture's mailing address in Indiana, stated that the "referenced exemption belonged to the previous owner and was left on the account in error."

The Appraisal Review Board heard the protest of "South ½ Block 8 Venture" concerning the denial of the religious-organizations exemption for tax years 2015, 2016, and 2017. The Appraisal Review Board adjusted the exemption to be 0% exempt in 2015 and 33.33% exempt in 2016 and 2017, though the record does not reveal the basis for the distinction.

The Venture sued TCAD, seeking judicial review of the denial of the exemption, describing itself as "the owner of real property" at 104 Trinity in Austin.[1] The Venture asserted that the Parcel was "one hundred percent exempt . . . as property of a religious organization." Both parties filed traditional motions for summary judgment. TCAD argued that the Venture was not entitled to the religious-organizations exemption for the Parcel because the Venture was not a

---

[1] The Venture did not apply for a religious-organizations exemption on the other two parcels that comprise the Venture's property.

religious organization; TCAD contended that the Venture—not the Church—owned the property and that the Venture had an identity distinct from that of its component partners, including the Church. The Venture responded that, because the Church could compel the Venture to return legal title to the Church, the Church was the equitable owner of the Parcel; the Venture argued that the Church's equitable ownership and religious use of the Parcel as the Reading Room exempted the Parcel from taxation.

The trial court granted TCAD's motion and denied the Venture's motion without stating a basis for its decision.

## APPLICABLE LAW

This appeal involves statutory and case law governing review of a summary judgment, statutory construction, the property-tax exemption for religious organizations, and the applicability of a court-recognized definition of "owner" that reaches beyond the name on the property deed.

Where the trial court's order does not specify the grounds for its summary judgment, we must affirm the judgment if any theory presented to the trial court and preserved for appellate review has merit. *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003). A movant who files a traditional summary-judgment motion must show that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c). To determine whether a movant established its right to summary judgment, we construe the evidence in the light most favorable to the non-movant, crediting evidence favorable to the nonmovant if a reasonable factfinder could and disregarding contrary evidence unless a reasonable

4

factfinder could not. *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009).

When cross-motions for summary judgment are filed, "[e]ach party bears the burden of establishing that it is entitled to judgment as a matter of law." *Guynes v. Galveston County*, 861 S.W.2d 861, 862 (Tex. 1993). When reviewing a trial court's rulings on cross-motions for summary judgment, we review all the summary-judgment evidence, determine de novo all issues presented, and render the judgment the trial court should have rendered. *Merriman v. XTO Energy, Inc.*, 407 S.W.3d 244, 248 (Tex. 2013).

Statutory construction is a question of law that we review *de novo. Southwest Royalties, Inc. v. Hegar*, 500 S.W.3d 400, 404 (Tex. 2016). Our primary objective is to give effect to the Legislature's intent, which we ascertain from the plain meaning of the words used in the statute, if possible. *Greater Houston P'ship v. Paxton,* 468 S.W.3d 51, 58 (Tex. 2015). Tax exemptions are narrowly construed, and the taxpayer has the burden to clearly show that an exemption applies. *See Davies v. Meyer*, 541 S.W.2d 827, 829 (Tex. 1976); *see also AHF-Arbors at Huntsville I, LLC v. Walker Cnty. Appraisal Dist.,* 410 S.W.3d 831, 837 n.30 (Tex. 2012).

Religious organizations are entitled under certain conditions to exemption from taxation of real property they own. *See* Tex. Tax Code § 11.20. As applicable here, the property for which an exemption is sought must be used primarily as a place of regular religious worship and be reasonably necessary for engaging in religious worship. *Id.* § 11.20(a)(1). Further, to qualify as a religious organization entitled to an exemption, the organization must do the following:

> (1) be organized and operated primarily for the purpose of engaging in religious worship or promoting the spiritual development or well-being of individuals;

5

(2)  be operated in a way that does not result in accrual of distributable profits, realization of private gain resulting from payment of compensation in excess of a reasonable allowance for salary or other compensation for services rendered, or realization of any other form of private gain;

(3)  use its assets in performing the organization's religious functions or the religious functions of another religious organization; and

(4)  by charter, bylaw, or other regulation adopted by the organization to govern its affairs direct that on discontinuance of the organization by dissolution or otherwise the assets are to be transferred to this state, the United States, or a charitable, educational, religious, or other similar organization that is qualified as a charitable organization under Section 501(c)(3), Internal Revenue Code of 1954, as amended.

*Id*. § 11.20(c).

The parties dispute the applicability of the Texas Supreme Court's holding that a property-tax exemption on land equitably owned by a community housing development organization (CHDO) could be imputed to a non-CHDO legal-title holder.  *See AHF-Arbors*, 410 S.W.3d at 839.  An equitable owner is a party who has the present right to compel the legal-title holder of land to convey its legal title to that party.  *Id*. at 837.  In *AHF-Arbors*, Atlantic Housing Foundation, Inc. (Atlantic), was the sole member of both companies—AHF-Arbors at Huntsville I, LLC and AHF-Arbors at Huntsville II, LLC—that held legal title to apartment complexes in Texas.  *Id.* at 834.  The AHF-Arbors LLCs sought and were denied the CHDO exemption for their properties, sued and lost on summary judgment, and lost on appeal.  *Id*.  The trial court concluded that the AHF-Arbors LLCs had not proven that *they* were CHDOs or met any of the related requirements.  *Id*.  The Texas Supreme Court reversed, noting that the Legislature did not limit the term "own" to legal-title holders, *id*. at 836-37, and that Atlantic and the AHF-Arbors LLCs were treated as one for federal income-tax purposes, *id*. at 839.  The Texas Supreme Court agreed with a lower court's reasoning in a different case imputing an equitable

6

owner's CHDO status to its non-CHDO subsidiaries; the Texas Supreme Court noted that allowing the exemption for equitable owners who are CHDOs was consistent with the purposes of the exemption. *Id*. at 838-39 (citing *TRQ Captain's Landing v. Galveston Cent. Appraisal Dist.*, 212 S.W.3d 726, 732 (Tex. App.—Houston [1st Dist.] 2006), *aff'd*, 423 S.W.3d 374 (Tex. 2014)). The Texas Supreme Court concluded that, because Atlantic was a CHDO, completely controlled the AHF-Arbors LLCs, and had complete control over the AHF-Arbors LLCs to compel transfer of legal title to itself, Atlantic was the equitable owner of the property and that its CHDO status could be imputed to the AHF-Arbors LLCs to obtain the property-tax exemption. *Id.*

## DISCUSSION

This appeal turns on whether the religious-organizations exemption from property tax is available based on an equitable owner's status as a religious organization and its use of the property, and whether a non-religious-organization legal-title holder can benefit from that tax exemption. The Venture contends that the trial court erred by concluding that the Reading Room is not owned by a religious organization and is not exempt from property taxes. The Venture contends that the Church was an equitable owner of the Parcel and that its status as a religious organization qualified the property for the religious-organizations exemption during taxable years 2015-17. TCAD defends its summary judgment on grounds that only religious organizations that are legal-title holders are owners under the religious-organizations exemption; it argues that the Venture was the legal-title holder, was not a religious organization, and was properly denied a religious-organizations exemption on the Parcel. TCAD further argues that, even if the equitable-title theory applies here, the Church does not hold equitable title because it does not have the unqualified power to compel the Venture to convey legal title back to the Church.

7

**I. Religious organizations that are equitable owners of real property can, by their use of the property for religious purposes, cause that property to qualify for a property-tax exemption.**

The Texas Tax Code allows tax exemptions for properties owned by various types of entities and used for various specified purposes, including property owned by religious organizations and by CHDOs. *See* Tex. Tax Code §§11.182 (CHDO exemption); .20 (religious-organizations exemption); *see generally id.* §§ 11.11–.38 (other exemptions). But the Tax Code does not expresssly define what type of "owner" merits such exemptions. *See*, *e.g.*, *id.* §§ 1.04 (general definitions), 11.182 (CHDO exemptions), 11.20 (religious-organizations exemption). The Texas Supreme Court has held that, for CHDOs, the terms "owner," "owned," and "owns" include equitable ownership if the circumstances satisfy the other requirements for exemptions on properties equitably owned by CHDOs. *See AHF-Arbors*, 410 S.W.3d at 837-39; *see also* Tex. Tax Code § 11.182. The parties dispute whether the reasoning for the CHDO-related exemption should be extended to the religious-organizations exemption.

In concluding that the term "owner" includes equitable owners, the Texas Supreme Court relied on the equitable owner's right to compel the legal-title holder to return legal title to the equitable owner as well as the equitable owner's general power to control the use of the property to achieve the goals of the statute. *See AHF-Arbors*, 410 S.W.3d at 837, 839. The CHDO tax exemption "provide[s] a tax exemption for the CHDO-controlled use of property for low-and moderate-income housing without profit." *See id.* at 837. As the CHDO exemption is intended to encourage private investment in developing low-income housing and to allow charitable organizations to operate with less revenue, the religious-organizations exemption is intended to avoid taxation on a charitable organization so it can focus on its mission with reduced costs. *See id.* (purposes for CHDO exemptions); *Bexar Cnty. Appraisal Rev. Bd. v. First Baptist Church*,

8

846 S.W.2d 554, 558 (Tex. App.—San Antonio 1993, writ denied) (citing *Walz v. Tax Comm'n*, 397 U.S. 664, 673 (1970)).  As discussed above, Atlantic, the CHDO, was the sole member of the AHF-Arbors LLCs and had complete control of the LLCs, including the ability to require conveyance of legal title to Atlantic.  *See AHF-Arbors*, 410 S.W.3d at 839.

TCAD argues that equitable ownership is a limited exception to the general rule for property-tax exemptions and should not be extended to the religious-organizations exemption, citing a case declining to impose tax liability on equitable owners.  *See Bailey v. Cherokee Cnty. Appraisal Dist.*, 862 S.W.2d 581, 584 (Tex. 1993) ("While it is true that the heirs hold equitable title to estate property, this interest does not give rise to tax liability. The responsibility for taxes lies with the administrator as holder of legal title.")  TCAD argues that the CHDO exemption is distinct from the religious-organizations exemption in ways that make the inclusion of equitable owners under *AHF-Arbors* inapplicable here.  TCAD argues that the CHDO statute contemplated a multi-layered ownership structure because of the realities of the commercial housing industry and was intended to entice private funds to develop low-income housing.  *See AHF-Arbors*, 410 S.W.3d at 839; *see also* Tex. Tax Code § 11.182(e).  The religious-organizations exemption has no similar focus on ownership structure or intent apparent in its terms.  *See* Tex. Tax Code § 11.20.  There is no evidence or argument that the federal government views the Church and the Venture as a single entity for federal tax purposes—unlike its view of Atlantic and the AHF-Arbors LLCs in *AHF-Arbors*, 410 S.W.3d at 834.  TCAD argues that including equitable owners under section 11.20 would ignore all formalities for conveying real estate and conflict with the text and purpose of the statute.  TCAD contends that the Legislature's choice not to define "owners" as including equitable owners is significant.

9

We conclude that the terms "own," "owners," and their variants should have consistent meaning within the property-tax exemptions provisions of the Tax Code. In construing a statute, we may consider factors including the object sought to be obtained and the consequences of a particular construction. *See* Tex. Gov't Code § 311.023. We must presume that the Legislature intended a just and reasonable result when enacting the statute. *Id*. § 311.021. We should not assign a meaning to one statutory provision that would be inconsistent with other provisions of the same act even if the provision, standing alone, might be susceptible to such a construction. *Texas Dep't of Transp. v. Needham*, 82 S.W.3d 314, 318 (Tex. 2002). We avoid disharmony within the Tax Code by holding that the term "owner" and variations on that term are defined consistently across the property-tax exemption provisions in Texas Tax Code Chapter 11. Interpreting the Tax Code's meaning of "owner" differently for different exemptions would inject disharmony and inconsistency into the Tax Code. The purposes of the CHDO- and religion-related exemptions regarding easing the tax burden on particular uses of property do not change based on whether the CHDO or the religious organization is a legal or equitable owner. As the Texas Supreme Court found no reason to deny a CHDO the benefits of the tax exemption based on its equitable-owner status in *AHF-Arbors*, 410 S.W.3d at 839, we find no reason to deny the benefits of the tax exemption to a religious organization using the property for religious purposes solely because it is an equitable owner.

The trial court erred to the extent that it held that religious organizations that are equitable, but not legal, owners of property used for religious purposes as a matter of law cannot be owners entitled to a religious exemption from property tax.

10

## II. The Church is the equitable owner of the Parcel.

The Venture contends that the Church is the equitable owner of the Parcel as a matter of law because the Church has the unqualified power to compel the Venture to convey legal title to it. *See AHF-Arbors*, 410 S.W.3d at 837; *TRQ*, 212 S.W.3d at 737. TCAD counters that the Church does not hold equitable title because (1) the deed made the Venture the clear legal-title holder; (2) the Church does not automatically receive legal title at the expiration of the lease; (3) the lease does not give the Church an unqualified purchase option; and (4) the Church does not wholly own and control the legal-title holder, the Venture.

TCAD's first three arguments are undisputed but irrelevant. The Venture's undisputed status as legal-title holder does not bar the Church from equitable ownership. *See generally AHF-Arbors*, 410 S.W.3d at 837-39. The Church does not claim equitable ownership under the lease or a right to purchase the Parcel but instead based on the right to compel conveyance of legal title to itself.

TCAD contends that the Church's role in the Venture and relationship to the property do not reach the level of power and control that courts found gave CHDOs equitable ownership and access to the CHDO-related exemption. *See id*. at 837-39; *TRQ*, 212 S.W.3d at 732; *see also Harris Cnty. Appraisal Dist. v. Southeast Tex. Hous. Fin. Corp.*, 991 S.W.2d 18, 23 (Tex. App.—Amarillo 1998, no pet.). A parent company has equitable title to real property when the parent company fully owns its subsidiary, the subsidiary holds legal title to real property, legal title to the property reverts to the parent upon dissolution of the subsidiary, and the parent has the power to dissolve the subsidiary at any time. *TRQ*, 212 S.W.3d at 732, *cited with approval in AHF-Arbors*, 410 S.W.3d at 838-39; *see also Southeast Texas Hous. Fin. Corp.*, 991 S.W.2d at 23. Unlike the relationship between the CHDO and the legal-title holders in *AHF-Arbors*, the Church

11

is not the parent or sole owner of the Venture, the Church does not have the exclusive power to dissolve the Venture, the governing bodies of the Church and Venture are not identical, and there is no evidence that the Church and the Venture are a single entity for income-tax purposes. *See AHF-Arbors*, 410 S.W.3d at 834.

Nevertheless, we conclude that the Venture's ownership structure and the Church's power to compel the return of title bring it within the scope of the *AHF-Arbors* definition of "equitable owner" of the Parcel. *See* 410 S.W.3d at 837-39. Though the Church co-owns the Venture with two others whose former properties the Venture also owns, the Venture was structured so that the partners retained control over the tracts they contributed. The Church and its partners were solely responsible for management of the tract they contributed, including making short-term rentals and maintaining adequate insurance coverage on it (partnership agreement Section 3.1), agreed to pay "the costs and expenses of the operation of the tract of land each contributed" (Section 4.1); retained responsibility for debts, liabilities, obligations, and expenses regarding the Parcel (Section 4.2); and were each allocated the income and expenses attributed to the rental of their respective contributed tracts (Section 5.1). Any decision affecting the joint sale or lease of all the tracts required unanimous consent of the partners (Section 3.1). These factors augment the chief reason the Church is an equitable owner under the applied reasoning of *AHF-Arbors*—the Church's unqualified power to compel legal title by withdrawing from the Venture. Section 6.1 of the Venture's partnership agreement provides:

> A partner may withdraw from the [Venture] at any time on ten days written notice to that effect delivered to the other partners. Upon the effective date of withdrawal, . . . the [Venture] must redeem and liquidate (and the withdrawing partner must transfer) the withdrawing partner's interest by distributing to the withdrawing partner . . . the amounts and property that the partner would receive if the [Venture] had wound up and liquidated on the date of withdrawal under Section 6.3.

Under Section 6.3, "the Partnership must convey back to the contributing partner the interest in the south ½ of Block 8 that the partner conveyed to the [Venture] if the interest is still held by the [Venture]." These provisions are not a purchase agreement, but are an unqualified power to compel a simple reconveyance upon an unqualified power to withdraw from the Venture. Thus, the Church can compel the conveyance of legal title by exercising its unrestricted right to withdraw from the Venture.

TCAD argues that this power to compel legal title is only a possibility of reverter or contingent remainder, which are not taxable title interests (and thus not exempt). *See Cypress Fairbanks Indep. Sch. Dist. v. Glen W. Loggins, Inc.*, 115 S.W.3d 67, 70 (Tex. App.—San Antonio 2003, pet. denied) (defining "possibility of reverter" as grantor's right to fee ownership reverting if condition terminating determinable fee occurs); *Texas Tpk. Co. v. Dallas County*, 271 S.W.2d 400, 401-02 (Tex. 1954) (defining "contingent remainder" as condition where grantee's right to obtain title is dependent on performance of condition by grantor). Where a grantee's right to obtain title is "entirely dependent upon performance of conditions by the grantors," the grantee's right to become the owner of legal title is not a vested interest, is purely contingent, and is not taxable. *Texas Tpk.*, 271 S.W.2d at 402.

But the Church's right to regain legal title is not contingent on the actions of others. In a CHDO-related case, the court of appeals held that the CHDO's unqualified right to dissolve the legal-title holder and compel the reversion of legal title to the CHDO showed that the CHDO had "the present right to compel legal title to the apartments and thus holds equitable title to them." *TRQ*, 212 S.W.3d at 733, *reasoning of case approved in AHF-Arbors*, 410 S.W.3d at 839. TCAD argues that the Church can compel return of legal title only if the Venture still possesses the Parcel,

13

but that argument fails to defeat equitable ownership on practical grounds. Under the partnership agreement, the Venture can dispose of the Parcel along with the others only with the Church's consent, and the Church retains the right to compel title until it consents to a transfer; if the Church consented to a transfer to another party that was effectuated, it would have no claim to ownership but would also not be liable for property tax or need an exemption. Unlike parties with a mere possibility of reverter or a contingent remainder, the Church controls the circumstances under which it can compel the Venture to return the Parcel to the Church; the Church needs no approval or reason to exercise its right to exit the Venture. That is the essence of equitable title under *AHF-Arbors*, 410 S.W.3d at 839.

The terms of the Venture's partnership agreement show that the Church is the equitable owner of the Parcel as a matter of law.

## III.    The Venture is entitled to the religious-organizations exemption on the Parcel.

While TCAD focused its argument on the equitable-ownership issue in defending the summary judgment, the Venture must show as a matter of law that the Church—and by imputation the Venture—is entitled to the religious-organizations exemption for its use of the Parcel to prevail in this appeal and merit rendition of judgment in its favor,. *See* Tex. Tax Code § 11.20(c); *cf. AHF-Arbors*, 410 S.W.3d at 838-39. In light of the discussion above, we will review the evidence regarding the Church's nature and the use of the Parcel to determine whether, as a matter of law, the Parcel was exempt from property tax during 2015, 2016, and 2017.

### A.    The evidence shows no dispute that the Church is a religious organization.

The Venture submitted evidence regarding each of the four elements necessary to qualify an organization as "religious." *See id.* § 11.20(c).

14

- The Venture submitted evidence that the Church was organized and operated primarily for the purpose of engaging in religious worship or promoting the spiritual development or well-being of individuals. *See id*. § 11.20(c)(1). It introduced the statement from the Church's bylaws that the Church was formed "for the support of public worship according to the teaching of Christian Science as set forth in the Bible" and other documents.

- The Venture submitted evidence that the Church was operated in a way that did not result in accrual of distributable profits, realization of private gain resulting from payment of compensation in excess of a reasonable allowance for salary or other compensation for services rendered, or realization of any other form of private gain. *See id*. § 11.20(c)(2).

- The Venture introduced the section of the Church's bylaws designating charitable uses for Church funds. The Venture also submitted evidence of how it used its assets in performing the organization's religious functions or the religious functions of another religious organization. *See id*. § 11.20(c)(3).

- The Venture also submitted evidence of the Church's dissolution plan requiring the Church's assets to be distributed on dissolution to non-profit organizations as required by law. *See id*. § 11.20(c)(4).

No evidence in the record challenges the Venture's evidence on these elements.

The Venture's unchallenged summary-judgment evidence reveals no genuine issue of material fact regarding the Church's status as a religious organization under the Texas Tax Code. *See id*. § 11.20(c).

**B.      The record shows no dispute that the Parcel was used for religious purposes.**

The Venture submitted evidence that the Reading Room was a use of the Parcel for religious worship. The Tax Code defines "religious worship" as "individual or group ceremony or meditation, education, and fellowship, the purpose of which is to manifest or develop reverence, homage, and commitment in behalf of a religious faith." *Id*. § 11.20(e). The Venture submitted the affidavit of a Church representative who described the use of the Reading Room. He described it as

15

> a quiet place for reading, study and prayer and an avenue for the public to come into contact with Christian Science. It also offers Christian [S]cience books, periodicals, and other media for sale. And also provides a place for quiet mediation and prayer, where one may study the Bible and the Church's denominational textbook, *Science and Health with Key to the Scriptures*.

He also stated that each branch of the Church is required by its manual to have a Reading Room. The Church purchased the Parcel in 1993, converted it into the Reading Room, and used it as the Reading Room until June 15, 2017. The Church's representative noted that the Parcel had been fully exempt from property tax for decades before the transfer of legal title to the Venture; TCAD did not revoke the exemption beyond the year after the transfer.

TCAD did not submit evidence challenging the religious nature of the use of the Parcel as the Reading Room. There is no genuine issue of material fact regarding the use of the Parcel for religious worship by its equitable owner, the Church, under the Texas Tax Code. *See id*. § 11.20(a), (e).

## C. The Parcel is exempt from property tax.

TCAD observes that a partnership is treated as "an entity distinct from its partners." Tex. Bus. Orgs. Code § 152.056. TCAD argues that the Church's status and use of the Parcel should not be attributed to the Venture.

But the Texas Supreme Court was not troubled by the distinct identities of business forms in *AHF-Arbors*, focusing instead on the exemption-qualifying entity's control of the legal-title holder and the use of the property. 410 S.W.3d at 837-39. The Church is an equitable owner of the Parcel through its membership in the Venture, its responsibilities regarding the Parcel, and its right to control the disposition of the Parcel. *Cf. id*. (considering Atlantic's equitable ownership of the AHF-Arbors LLCs' deeded property). The Church's nature and its use of the property entitle

it to a religious-organizations property-tax exemption that can be imputed to the legal-title holder of the Parcel, the Venture. *Cf. id.* at 839 (imputing CHDO property-tax exemption of equitable owner of property to legal-title owners who were not CHDOs).

We sustain the Venture's issue on appeal.

## CONCLUSION

The trial court erred by granting TCAD's motion for summary judgment. That motion and judgment depended on a determination that the Parcel was not owned by a religious organization during 2015, 2016, and 2017.

The trial court erred by denying the Venture's motion for summary judgment. The record lacks a genuine issue of material fact and shows as a matter of law that the Church is the equitable owner of the Parcel, is a religious organization, and used the Parcel for religious purposes during the disputed years 2015, 2016, and 2017.

We reverse the trial-court judgment. We render judgment that the Parcel was fully exempt from property tax in 2015, 2016, and 2017.

_____

Darlene Byrne, Chief Justice

Before Chief Justice Byrne, Justices Theofanis and Ellis

Reversed and Rendered

Filed: November 26, 2025

17